UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tiona N. Barnes,      Case No. 3:22-cv-02184

     Plaintiff

v.      MEMORANDUM OF OPINION
AND ORDER

Santander Consumer USA, Inc., et al.,

     Defendants

### BACKGROUND AND HISTORY

*Pro se* Plaintiff Tiona N. Barnes filed this action against Santander Consumer USA, Inc. dba Chrysler Capital ("Chrysler Capital"), and BMW of Toledo. In her Complaint, she states that she purchased a vehicle from BMW of Toledo and the Defendants did not properly credit her down payment and failed to inform her of her right to rescind the transaction.

She asserts violation of the Truth in Lending Act, 15 U.S.C. § 1635 ("TILA"), the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692c. 1692d, 1692e, 1692f, 1692h, and 1692j ("FDCPA"), 15 U.S.C. § 1605 (definition of finance charges), 15 U.S.C. § 78o (securities and exchange definitions), 15 U.S.C. § 1644 (fraudulent use of a credit card), 15 U.S.C. § 1692 (prohibiting the advertisement of specific financing arrangements if those arrangements if those arrangements are not customarily available), 12 U.S.C. § 1431 (defining the powers of banks), 42 U.S.C. § 408 (pertaining to penalties

for fraudulent receipt of social security benefits), and 18 U.S.C. § 8 (defining the United States obligations and securities).

On July 6, 2021, Plaintiff signed a contract with BMW of Toledo to purchase a used 2016 BMW 535i XDrive sedan. The contract itemized each charge and credit, stated the final purchase price of the car with taxes and fees, listed the interest rate, calculated the finance charges and listed the monthly payment amount. The cash price for the vehicle was $26,474.98. She also purchased an extended warranty on the vehicle for $3,659.00. Plaintiff traded in a 2020 Jeep Renegade for which she still owed $30,275.00 to another finance company.

BMW of Toledo agreed to pay off the loan on the Jeep as part of this transaction. The value of the Jeep at trade-in was $25,500.00, resulting in a net loss on the trade-in of $4,775.00 to BMW of Toledo. Plaintiff made a down payment of $2,000.00. That amount was applied to the negative equity on the trade-in, leaving a balance of $2,775.00 that was still owed by Plaintiff to BMW of Toledo after they paid off the loan on the jeep. BMW of Toledo agreed to roll this amount into the new financing for the purchase of the BMW 535i XDrive sedan. The purchase price of the BMW including fees and the balance from the pay-off of the Jeep amounted to $33,539.98. The contract charged interest on the financed portion of the transaction at a rate of 16.22% over 72 months. Her finance charges were listed as $19,487.30. Plaintiff was told her monthly payments would be $736.49.

With respect to a right to rescind the contract, the agreement specified:

### NO COOLING OFF PERIOD

> State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel if the seller agrees, if this contract is subject to the limited right to cancel described on page 2, or for legal causes. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

(Doc. No. 3-2 at PageID #: 87). This clause appears in bold lettering that is larger than the standard lettering in the contract and is located just above Plaintiff's signature.

In her Complaint, Plaintiff alleges that she was initially told by Chrysler Capital that she required a down payment in the amount of $2,000.00 to obtain approval for financing. She states she later learned that the money she supplied as a down payment was applied instead to the balance she owed on the Jeep. In June 2022, one year after signing the contract, she attempted to rescind the transaction under the TILA, 15 U.S.C. § 1635. She claims that after she exercised her right to rescind the transaction, all financing charges should have become void. She sent several other notices of rescission, but Chrysler Capital refused to rescind the contract or subtract $2,000 from her loan balance, claiming it was already credited to the total amount financed. It appears that Plaintiff defaulted on her payments to Chrysler Capital and the car was repossessed by National Asset Recovery Specialist on October 19, 2022.

Plaintiff believes she had a right to rescind the contract for up to three years under the TILA and claims the Defendants both failed to inform her of this right and failed to allow her to exercise it nearly a year after she signed the contract. She claims she was incorrectly told she needed to provide a down payment and then that payment went to the dealership to go toward the amount applied to pay off her financing on the Jeep in violation of 15 U.S.C. §§ 1662 and 1605. She also asserts six causes of action under the FDCPA, although she does not allege any facts pertaining to debt collection efforts.

BMW of Toledo filed a Motion to Dismiss (Doc. No. 8). They assert that Plaintiff's claims under 15 U.S.C. § 1635 must be dismissed as that statute is applicable only to transactions in which a security interest is taken on real property used as the principal dwelling of the person, not to auto loans. They also contend that the statute of limitations for TILA claims is one year from the date of the violation. Plaintiff signed the contract in June 2021, but filed this action in December 2022, six

3

months past the expiration of the statute of limitations. Finally, they assert that the other statutes cited by Plaintiff do not apply in this situation.

Plaintiff responded to the Motion by acknowledging that 15 U.S.C. § 1635 applies only to mortgage loans, but now claims she has the right to rescind under the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.09 ("CSPA"). She claims that she wanted her $2,000 down payment to be used toward her purchase price of $26,474.98 rather than being used toward the negative equity in the Jeep. She contends they failed to disclose the true purchase price to her and therefore violated the Ohio CSPA. The Defendant replied to her response by indicating Plaintiff cannot bring new claims in a response to a Motion to Dismiss and reiterates their grounds for dismissal stated in their Motion.

Plaintiff also filed a Motion for Default Judgment against Chrysler Capital. Plaintiff contends they have not answered her Complaint and she is entitled to judgment against them. Counsel for Chrysler Capital entered a limited appearance for the purpose of contesting service. Chrysler Capital contends it has not been properly served and therefore this Court lacks personal jurisdiction over them.

Plaintiff did not comply with Federal Civil Procedure Rule 4 to perfect service against either Defendant. First, Rule 4(c)(2) states that the Summons and Complaint may be served by any person who is at least 18 years old and who is not a party to the case. Plaintiff indicates on the proof of service (Doc. No. 7) that she served the Summons and Complaint. Plaintiff is a party and therefore cannot serve the Complaint herself. Furthermore, Federal Civil Procedure Rule 4(h) provides that a corporation can be served in one of two ways—either by a method allowed by state law, or by delivery of the Summons and Complaint to an officer or other agent of the corporation. Such delivery must be made personally and cannot, under Rule 4(h)(1)(B), be accomplished by certified or regular mail. Plaintiff states only that she "sent the summons to CT CORPORATION which is the

registered agent on the behalf of defendant SANTANDER CONSUMER USA INC DBA CHRYSLER CAPITAL on Monday December 19, 2022, and summons was received by defendant on Thursday December 22, 2022."

She does not indicate how she sent the summonses but based on this comment, it does not appear that she personally delivered them to an officer or agent of the corporation. Ohio law permits certified mail service, but only by the Clerk of Court. Ohio Civ R 4.1 There is no indication that the Summons and Complaint was served by the Clerk of Court or that it was served by certified mail. There is no civil procedure rule under federal or state law that allows the Plaintiff to serve the Summons and Complaint by regular mail. Without proper service of process, or a waiver of service, I cannot exercise personal jurisdiction over a Defendant. *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012). Proper service under Rule 4 is therefore a necessary prerequisite to entry of default or default judgment. *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003). Because service on Chrysler Capital was not proper, Plaintiff's Motion for Default Judgment (Doc. No. 18) is denied.

### STANDARD OF REVIEW

When deciding a Motion to Dismiss under Federal Civil Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) clarified the law regarding what the Plaintiff must plead in order to survive a Motion to Dismiss under Rule 12(b)(6).

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. The Plaintiff's obligation to provide

5

the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court further explains the "plausibility" requirement, stating that "a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* In reviewing this Motion, I may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. FED. R. CIV. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## ANALYSIS

The crux of Plaintiff's Complaint appears to be that she expected her down payment of $2,000.00 to be applied to the purchase price of the new car rather the amount owed to pay off the old car that she was trading-in to the dealership. The negative equity on the old car, reduced by the down payment, and the purchase price and fees on the new car were combined for financing in the same loan. She indicates that she understood that the negative equity would be added to the amount financed to purchase the new car, but she claims she expected her down payment to be used to reduce the purchase price of the new car and not the negative

equity balance. She contends this is a violation of the TILA but she does not cite to any specific section or provision of the statute other than 15 U.S.C. § 1635.

Plaintiff's expectations, however, are in direct contradiction to the explicit language of the contract she signed. (Doc. 3-2 at PageID #:85). The contract provides an itemization of all charges and credits, and clearly shows that the $2,000.00 is being applied to reduce the negative equity on the Jeep from $4,775.00 to $2,775.00. The $2,775.00 was then added to the purchase price of the new car, the extended warranty and fees to arrive at the total amount financed of $33,539.98. Plaintiff signed the contract attesting that she "agree[d] to the terms of this contract. [She] confirm[ed] that before [she] signed this contract, [BMW of Toledo] gave it to [her] and [she] was free to take it and review it. [She] confirm[ed] that [she] received a completely filled-in copy when [she] signed it." (Doc. 3-2 at PageID #:87). Plaintiff states that her TILA claims are based on fraud and misrepresentation in the way in which the down payment was credited. The application of the $2,000 down payment, the purchase of the extended warranty, and other fees were expressly stated and explained in the contract. Plaintiff fails to allege facts to suggest that BMW of Toledo did anything other than that which they indicated they were going to do and to which Plaintiff agreed in the contract.

Moreover, as indicated by BMW of Toledo, the statute of limitations for bringing an action under the TILA expired before Plaintiff brought this action. Actions asserting claims under the TILA must be brought within one year of the date of the alleged violation. The contract was signed on July 6, 2021. This action was filed on December 5, 2022, five months beyond the expiration of the time for bringing a TILA claim.

Plaintiff also brings numerous claims under the FDCPA. These claims cannot be asserted against BMW of Toledo. The FDCPA governs the conduct of debt collectors. BMW of Toledo is the seller. Plaintiff does not allege facts suggesting BMW of Toledo participated

7

in the collection of the debt. Chrysler Capital is the creditor. The statute, however, specifically excludes the creditor and any employee or officer of the creditor from the definition of a debt collector. 15 U.S.C. § 1692a(6). This statute does not apply to these Defendants.

Plaintiff cites to several statutes that appear irrelevant to the facts alleged in this Complaint. These include 15 U.S.C. § 1605 (definition of finance charges), 15 U.S.C. § 78o (securities and exchange definitions), 15 U.S.C. § 1644 (fraudulent use of a credit card), 12 U.S.C. § 1431 (defining the powers of banks), 42 U.S.C. § 408 (pertaining to penalties for fraudulent receipt of social security benefits), and 18 U.S.C. § 8 (defining the United States obligations and securities). She fails to allege any facts to suggest how these statutes might apply.

Plaintiff cites to 15 U.S.C. § 1692 as support for her claim that she was told she needed to provide a down payment and then that payment went to the dealership to pay off a portion of the balance she owed on her Jeep. All of the money supplied in this transaction, whether paid by Plaintiff or by Chrysler Capital goes to the dealership to pay for the car and to reimburse them for money they expended on her behalf to pay off the balance on the Jeep loan.. The statute cited does not address whether the money provided by Plaintiff is subtracted from one line item or another in the amount to be financed. Instead, it concerns the advertisement of specific financing arrangements if those arrangements are not customarily available. Plaintiff's Complaint does not address advertisements promising specific financing arrangements. Moreover, the amount paid for her down payment and the pay-off of existing loans on trade-in vehicles is customary. This statute does not apply.

Finally, Plaintiff sought rescission under 15 U.S.C. § 1635 of the TILA and 12 C.F.R. § 226.23. BMW of Toledo states in its Motion to Dismiss, and Plaintiff concedes, that these provisions apply only to consumer transactions in which a security interest in retained or acquired in

8

any property used as the principal dwelling of the person to whom credit is extended. This transaction did not involved a real estate security interest. That claim must be dismissed.

Plaintiff, however, in her Response to the Defendant's Motion to Dismiss (Doc. No. 14), seeks to add a claim under the Ohio CSPA for rescission that was not included in her original Complaint. BMW of Toledo objects stating that Plaintiff cannot add new claims in a Response to a Motion to Dismiss, as the Motion tests the sufficiency of the Complaint. I concur that this is not the proper way to add a new claim to her action. At this point, Plaintiff would have to seek leave of court to amend the Complaint. That claim is not properly before me.

Furthermore, as that claim arises under state law, not federal law, this court lacks subject matter jurisdiction over it. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). I, however, may exercise discretion in hearing state law matters. *Id.* at 726. In cases like this, where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id.* There would be no point in allowing Plaintiff to amend her Complaint to include a state law claim when I would have no jurisdiction to consider it.

## Conclusion

Having considered and examined the *pro se* Plaintiff's pleading to determine their legal viability, I conclude they fail to state a claim upon which relief may be granted. Therefore, the Defendant's Motion to Dismiss (Doc. No. 8) is granted and this action is dismissed. Plaintiff's Motion for Default Judgment (Doc. No. 18) is denied. Her Motion to Proceed *In Forma Pauperis* (Doc. No. 2) is denied as moot because she paid the full filing fee. Plaintiff's Motions Requesting to Proceed in Court (Doc. Nos. 17, 19) and Defendant's Motion to Stay Response (Doc. No. 6). and

Motion to Strike (Doc. No. 22) are also denied as moot. I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith. This case is closed.

    So Ordered.

                                             s/ Jeffrey J. Helmick
                                             United States District Judge